# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DANIELLE G.,**[1]

   **Plaintiff,**

             **Case No. 2:22-cv-4721**

  **v.**          **Magistrate Judge Norah McCann King**

**MICHELLE KING,**
**Acting Commissioner of Social Security,**[2]

   **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Danielle G. for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act,[3] 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Acting Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Michelle King, the current Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

[3] Plaintiff's procedural challenges to the SSI claim and to an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act are addressed later in the decision.

## I.    PROCEDURAL HISTORY

On July 7, 2020, Plaintiff filed an application for SSI benefits, alleging that she has been disabled since June 24, 2020. R. 21, 100, 106, 114–16.[4] The application was denied initially and upon reconsideration. R. 117–21, 123–25. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 126. ALJ Sharon Allard held a hearing on July 27, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 41–99. In a decision dated November 3, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 7, 2020, the SSI application date, through the date of that decision. R. 21–30. That decision became final when the Appeals Council declined review on June 21, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 2, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[5] On February 24, 2023, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[4] A copy of Plaintiff's SSI application does not appear in the record.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 7, 2020, the SSI application date, and the date of the decision. R. 23–24.

At step two, the ALJ found that Plaintiff's nervous system disorder was a severe impairment. R. 24. The ALJ also found that Plaintiff's medically determinable impairment of generalized anxiety disorder was not severe. R. 24–25.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 25.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 25–30. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an accounting clerk. R. 30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 7, 2020, the application date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 21. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16.

IV.    **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

A.    **State Agency Reviewing Consultants**

Nancy Simpkins and Leslie Williams[6] conducted an initial review of Plaintiff's medical record on behalf of the state agency on August 6, 2020. R. 101–05. According to Consultant Simpkins, Plaintiff could frequently lift and carry 10 pounds, could occasionally lift and carry 20 pounds, and could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders/ropes/scaffolds. R. 103–04. Plaintiff could sit for a total of about 6 hours in an eight-hour workday and could stand and/or walk for a total of about 6 hours in an eight-hour workday. R. 104. Consultant Simpkins also found that Plaintiff had no manipulative, visual, communicative, or environmental limitations. *Id*. Consultant Williams noted that Plaintiff alleged "physical complaints as well as anxiety 'secondary to' physical issues. She has no psych history and is not in psych treatment. MSE [mental status examination] from neurologist was grossly intact. ADL [activities of daily living] limitations, if any, are due to physical complaints. No further psych development is warranted at the current time." R. 102–03. The consultants determined that the record documented a severe neurological disorder, but no severe mental disorder. R. 103 (reflecting further diagnoses of other disorders of the nervous system and anxiety and obsessive-compulsive disorders; Listing 11.17 was considered).

Leonard Nicosia and Amy Brams[7] reviewed Plaintiff's medical record upon reconsideration for the state agency on December 14, 2020. R. 107–13. Consultant Nicosia

---

[6] These consultants' credentials do not appear in the record. However, the record reflects that Consultant Simpkins has a specialty in internal medicine, R. 104–05, and Consultant Williams has a specialty in psychology, R. 103.

[7] These consultants' credentials do not appear in the record. However, the record reflects that Consultant Nicosia has a specialty in internal medicine, R. 111, 113, and Consultant Brams has a specialty in psychology, R. 110

agreed with Consultant Simpkins' opined limitations. R. 110–11 (affirming physical RFC upon

reconsideration); *see also* R. 108 ("Claimant's RFC is for a full range of light work. At step 4

claimant can perform [prior relevant work] as a senior finance operations associate as described.

Claimant is not disabled. Accordingly, denial is affirmed."). On reconsideration, it was again

found that Plaintiff had a severe neurological disorder, but a non-severe mental disorder. R. 109

(reflecting further diagnoses of other disorders of the nervous system and depressive, bipolar and

related disorders). In conducting the Psychiatric Review Technique ("PRT"), Consultant Brams

concluded that Plaintiff did not satisfy the criteria for listing 12.04. *Id*. She further found that

Plaintiff had only mild limitations in the paragraph B criteria, including the areas of

understanding, remembering, or applying information; interacting with others; concentrating,

persisting, or maintaining pace; or adapting or managing oneself. *Id*. (finding further that the

evidence does not establish the presence of the paragraph C criteria). Consultant Brams also

provided the additional explanation:

> 47 year old recon DI.
>
> Initial allegations Cyclic Vomiting Syndrome; Periodic Paralysis / Muscle Weakness; Anxiety Secondary to a Physiological Condition; Disorder of the Autonomic Nervous System; Calcium Channelopathy; Insomnia.
>
> Recon: Changed Condition June 2020. New medication and getting off of work attempts and frustration, and a schedule seem to create less vomiting episodes than in the last few years - however these changes at the cost of me being less able than even before to think, or concentrate for more than 5 minutes. My lifelong insomnia is also worse than ever, and periodic paralysis comes unexpectedly amidst almost constant exhaustion. I can barely accomplish the basics of feeding or caring for myself, and am completely non-24 and unable to plan even an hour in advance when I might be ill or asleep. And my nearly constant headaches intensify within moments of trying to concentrate. New Condition June 2020. Tingling, sweatiness, headaches, weight loss, depression - possibly as an adjustment to increasing doseages of Potassium and Acetezolamide which are ongoing. I'm dizzy, walk into walls, and am unable to think.
>
> Initial review for psych dated 8/6/20 was a write off with the following summary.

Claimant alleges physical complaints as well as anxiety "secondary to physical issues. She has no psych history and is not in psych treatment. MSE from neurologist was grossly intact. ADL limitations, if any, are due to physical complaints. No further psych development is warranted at the current time.["]

Recon:
Claimant was seen for a CE/MSE. She has no recent psych tx. but is prescribed Clonazepam. She reported fatigue and mood was discouraged, affect constricted and she needed some redirection back to topic. Her MSE was otherwise WNL. Persistence, ability to follow multi-step instructions, STM [short-term memory], LTM [long-term memory], working memory and concentration were unimpaired. She reports that cyclic vomiting has been greatly controlled by a new medicine.

ADLs indicate she does laundry, simple food prep, can shop, can manage money, can drive alone, gets along with auth figures but reports others do not understand her illness and has no friends.

Psych is not severe[.]

R. 109–10.

## B.    Marc Friedman, Ph.D.

Marc Friedman, Ph.D., conducted a mental status examination on October 20, 2020. R.

360–62. Dr. Friedman observed that Plaintiff was poorly dressed and groomed. R. 360. Plaintiff

reported that "[s]he had a long history of cyclic vomiting, but said recently she found a new Dr.

who prescribed medication which is greatly controlling the problem." *Id*. Although Plaintiff

complained that her life "sucks," she was not undergoing psychiatric treatment. *Id*. Upon mental

status examination, Dr. Friedman noted as follows:

She spoke using complete sentences . Speech was clear and understandable . Associations were generally logical and sequential and there were no signs of a thought disorder. She tended to ramble and she needed frequent redirection back to the original topic. The volume of speech was appropriate . Speech was goal oriented and relevant. She did make spontaneous comments. She did initiate , and was able to sustain conversation . Her eye contact was adequate during the interview. Mood was very discouraged, and affect was constricted. She did not display a sense of humor. She is not reporting hallucinations and her thinking does not appear to be delusional. She is not reporting suicidal ideation or intent. She was aware of the date. In terms of long-term memory, she had little difficulty recalling specific dates of past events. She had little difficulty remembering some events from her

10

childhood and teenage years. She was able to recall the current president and the previous 3 presidents . She was unable to remember what she ate for lunch yesterday. In terms of short-term memory, she was able to remember 3 out of three objects after a three minute delay, and 3 objects after a five-minute delay. *In terms of working memory, she was able to correctly repeat 5 digits and say 4 digits in reverse order.* She was able to perform serial sevens correctly . She was able to perform serial threes correctly. She had little difficulty concentrating on these tasks. She was able to spell "WORLD" correctly , and backwards. She was able to calculate 6 times $.25. She had little difficulty with abstraction. Fund of information was OK. For example, she did know who Martin Luther King Jr. was, she did know where Brazil is located, and did know who wrote Hamlet. In terms of judgment, if she was the first person to notice a fire starting in a movie theater, she would scream. If she found a letter in the street addressed to someone else she would mail it. Based on her history I would estimate that her judgment is adequate, and impulse control is adequate . Overall intellectual functioning is estimated to be within the average range. She did appear to be trying her best during her problem-solving attempts. *She is able to follow multi step directions. Her persistence in completing tasks was adequate. Social interaction skills were limited during the interview. Long-term memory appears to be unimpaired. Short-term memory appears to be unimpaired . Working memory appears to be unimpaired. Ability to concentrate was unimpaired.*

R. 361 (emphasis added). Dr. Friedman noted Plaintiff's reported daily activities and interests as

follows:

> She wakes up any time between 3:00 AM and 10:00 AM , after getting a very poor nights sleep. Appetite is reportedly very weak in the morning. She will generally eat no regular meals/day. She said that she "grazes". Daily hygiene is usually completed on an irregular basis. She frequently does not bother to get dressed. She is currently living alone. In terms of routine household chores she is able to do simple food preparation, laundry, but she said that she doesn't do any cleaning. She is able to go grocery shopping in the local area . She is able to drive independently. She is able to independently manage her money. In terms of hobbies or interests, she enjoys art and writing. In terms of social activity, she said that all of her former friends have "dumped me". She usually goes to bed very late, and reports severe difficulty falling and staying asleep.

R. 361–62. According to Dr. Friedman, Plaintiff could manage benefits on her own behalf. R.

362. Dr. Friedman made the following diagnosis and conclusions:

> Based on the claimant's report, as well as on observations made during the interview, I would conclude that she is showing symptoms of a major depressive disorder. *During the interview she was able to communicate clearly, but had difficulty staying on topic. Her social interaction skills were limited. She was able*

> *to comprehend and follow multi step directions. Her long-term memory appeared to be unimpaired. Short-term memory appeared to be unimpaired. Working memory appeared to be unimpaired. Ability to concentrate was unimpaired during the interview.* Prognosis is fair with psychiatric treatment. Her condition can be expected to last at least one year.

*Id*. (emphasis added).

### C.    Mark Mintz, M.D.

On July 23, 2021, Mark Mintz, M.D., Plaintiff's treating physician, completed a four-page, check-the-box, and fill-in-the-blank form entitled, "Disability Questionnaire – Symptom Checklist." R. 394–97. Asked how Plaintiff's "illness" began, Dr. Mintz checked the box "[g]radually[,]" beginning at age 5, and he noted that Plaintiff was then 47. R. 394. Addressing Plaintiff's symptoms, Dr. Mintz checked the boxes for chronic (fatigue symptoms); poor concentration; calculation difficulties; memory disturbance; depression/bipolar disorder; anxiety; panic attacks and/or phobias (irrational fears); sleep disturbance; disequilibrium; frequent headaches; migraines; unexpected or unplanned weight loss; muscular and joint aches/pains; weakness; abdominal pain; nausea or vomiting or both; and lightheadedness/spacy feelings. R. 394–96. Plaintiff's medications were Acetazolamide; potassium chloride; Klonopin; medical marijuana; and Temazepam. R. 397. According to Dr. Mintz, Plaintiff's impairments were likely to cause "good days" and "bad days" and that she was likely to be absent from work more than three times per month due to illness. *Id*. Plaintiff's conditions began in 1978. *Id*. Asked to attach an additional page to describe any other limitations that would affect Plaintiff's ability to work a regular job on a sustained basis, Dr. Mintz wrote "[s]ee reports". *Id*.

12

## V.    DISCUSSION

### A.    Mental Impairments

Plaintiff argues first that the ALJ erred in concluding, at step two of the sequential evaluation, that Plaintiff's anxiety and depression were not severe impairments. *Plaintiff's Brief*, ECF No. 12, pp. 17–26; *Plaintiff's Reply Brief*, ECF No. 21, pp. 6–12. Plaintiff also contends that the ALJ's failure to properly consider and account for Plaintiff's mild mental limitations resulted in a flawed RFC. *Plaintiff's Brief*, ECF No. 12, pp. 26–42; *Plaintiff's Reply Brief*, ECF No. 21, pp. 14–16. For the reasons that follow, this Court disagrees.

At step two, an ALJ must determine whether the claimant has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). However, "[s]o long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("Orr cannot overcome that fact: because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome. And without more, Orr provides no valid basis for remand."); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215-NLH, 2020 WL 3073829, at *4 (D.N.J. June 10, 2020) ("The Court finds that any error in the

ALJ's step two determination as to the severity of Plaintiff's impairments of PBA, OSA, and narcolepsy is harmless because contrary to Plaintiff's argument, the ALJ properly considered these impairments in the overall RFC assessment.").

As detailed above, the ALJ in the case presently before the Court decided in Plaintiff's favor at step two, when she found that Plaintiff's nervous system disorder was severe. R. 24. The ALJ also explained why she found that Plaintiff had only "mild" limitations in the four broad areas of mental functioning and, therefore, why Plaintiff's medically determinable mental impairment of generalized anxiety disorder was not severe:

> The claimant's medically determinable mental impairment of a generalized anxiety disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe.
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The next functional area is interacting with others. In this area, the claimant has mild limitation. The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant testified that she has not engaged in mental health treatment and the record fails to document any history of mental health treatment. Although the record documents that the claimant takes Klonopin, this prescribed medication is based on her symptoms of nausea and is prescribed to prevent episodes of vomiting. Her treatment notes with NeuroHealth and NeurAbilities revealed grossly intact mental status (Exhibits 1F and 5F) and during her independent mental status evaluation with Dr. Friedman in October 2020, her memory was unimpaired as was her ability to concentrate. The claimant reported to Dr. Friedman that she lived alone, was able to do simple food preparation, laundry, grocery shop, drive, and manage money (Exhibit 4F). The undersigned notes that throughout the hearing the claimant was able to provide detailed information regarding her medical providers and exhibited no deficits due to her alleged anxiety. DDS also opined that the claimant had no severe mental impairments (Exhibits 2A and 4A) and the undersigned finds these opinions to be persuasive as they are supported by findings noting that the claimant has intact mental status examinations. The undersigned also notes that these opinions are

consistent with the claimant's testimony that she receives no mental health treatment. As such, the undersigned finds only mild limitations in the "paragraph B" criteria and thus finds her anxiety disorder to be not severe.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 24–25. The ALJ went on to consider Plaintiff's mental impairments when crafting the RFC at step four of the sequential evaluation process. R. 26–29. The ALJ found that Plaintiff had the RFC to perform sedentary work as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally climb ramps and stairs; balance on wet moving or uneven surfaces; kneel, stoop, and crouch; and she cannot crawl or climb ladders, ropes or scaffolds.

R. 25. In crafting this RFC, the ALJ noted that Plaintiff "alleges disability due to cyclic vomiting syndrome, periodic paralysis, muscle weakness, anxiety, a disorder of the autonomic nervous system, calcium channelopathy, and insomnia[.]" R. 26. The ALJ considered Plaintiff's function reports, including, *inter alia*, Plaintiff's report that "she also has periodic paralysis and is unable to schedule anything around her episodes due to exhaustion and anxiety[;]" that she has "a great deal of stress with avoiding foods that trigger her [vomiting] episodes[;]" and that she "does not socialize and . . . does not handle stress well at all[.]" *Id.* The ALJ also considered Plaintiff's hearing testimony, including, *inter alia*, her testimony that she began medication in June 2020, which stopped her cyclical vomiting and that she attempted to work from March through May

2021 but had to stop working on June 4, 2021; her testimony "that she cannot work due to vomiting, weight loss, fatigue, and headaches"; her testimony "that in June 2020, she was using Klonopin for her migraines about four times a week and she reported it also helps her sleep[;]"; and her testimony that "she also has anxiety. She stated she does not go to mental health treatment. She stated she also does not go to the emergency room anymore. She stated she stopped going in March 2020 because it was not helping her and would exacerbate her condition." *Id*. The ALJ also considered Plaintiff's statements to Dr. Mintz that she was "being somewhat controlled by the fear and anxiety of a[] [vomiting] event" and that "Klonopin had been useful to abort the episodes but she reported that the Klonopin also made her relatively nonfunctional and not able to do her work." R. 27. The ALJ further considered, as follows:

> [A]s noted above, the claimant's mild "paragraph B" limitations are so slight that they do not cause any measurable loss of function in the mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures in a work setting. Thus, the following residual functional capacity assessment does not reflect any limitation in mental abilities. As such, the undersigned finds that although the claimant is limited to a compromised range of sedentary work, she is not precluded from all work activity as she alleges.

R. 27. The ALJ went on to consider medical opinion evidence addressing Plaintiff's mental impairments. R. 28–29. The ALJ found that the state agency reviewing consultants' opinions were "persuasive[,]" including, *inter alia*, the opinion that, although Plaintiff had a severe neurological disorder, she did not have a severe depressive or bipolar disorder, explaining as follows:

> Regarding the opinions of DDS, the undersigned finds them to be persuasive. *DDS found that the claimant had a severe neurological disorder but opined that she did not have a severe depressive or bipolar disorder.* DDS opined that the claimant was limited to a range of light work with postural limitations. Although the undersigned finds that the claimant is slightly more limited than DDS assessed and finds that the claimant is limited to a range of sedentary work with postural limitations, the

16

undersigned concurs that the findings of DDS are generally consistent with the medical evidence of record which shows that the claimant had improvement in her condition. *Although the claimant alleges physical complaints as well as anxiety secondary to her physical issues, the claimant has no psychiatric history and testified that she is not in any treatment for psychological issues. Her mental status examinations are noted to be grossly intact and her allegations of disability and limitations with activities of daily living are noted to be due to physical complaints.* DDS cited to the claimant's treatment records in exhibits 1F and 5F to support their findings and the undersigned concurs that the evidence supports a finding that the claimant is capable of work activity.

R. 28–29 (emphasis added). The ALJ further found that the consultative mental status evaluation performed by Dr. Friedman was consistent with the finding that Plaintiff did not have a severe mental impairment:

Regarding the opinion of the independent mental status examiner in Exhibit 4F, Dr. Friedman opined that based on the claimant's allegations as well as based on observations made during the interview, that the claimant *showed symptoms of a major depressive disorder.* Dr. Friedman noted that the claimant was *able to communicate clearly but did have difficulty staying on topic. The claimant's social interaction skills were noted to be limited but she was found to be able to comprehend and follow multistep directions. Her memory was unimpaired as was her ability to concentrate.* Dr. Friedman opined that she was capable of managing benefits in her own behalf. *Although Dr. Friedman did not provide a specific vocational assessment, the undersigned finds that his evaluation is consistent with the finding that the claimant does not have a severe mental impairment.* Although Dr. Friedman noted that the claimant had some slight issues, *the results of his evaluation are persuasive and consistent with the objective evidence which documents that the claimant's issues of vomiting are greatly controlled therefore reducing her alleged anxiety.* Moreover, the results of Dr. Friedman's *evaluation are supported by the claimant's reported activities of daily living as well as* buyer [sic] [by her] *indication that she does not receive any mental health treatment.*

R. 29 (emphasis added). In short, although the ALJ concluded at step two—with references to the record—that Plaintiff's generalized anxiety disorder was not severe, R. 24–25, the ALJ nevertheless went on to consider, at step four of the sequential evaluation process, Plaintiff's anxiety and depressive symptoms as well as any alleged limitations flowing from them, explaining why those mild mental impairments warranted no functional limitations in the RFC. R. 26–29. Moreover, in the view of this Court, this record contains substantial evidence to

support the ALJ's RFC determination in this regard. *See Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Plummer*, 186 F.3d at 429.

Plaintiff, however, complains that the findings of one Richard Boles, M.D., whom she identifies as a geneticist, support her claim that her mental impairments were severe. *Plaintiff's Brief*, ECF No. 12, pp. 8–9, 23. This Court disagrees. As Defendant observes, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, p. 22, Plaintiff did not actually submit any report or other evidence from this physician. *See* R. 8–9 (noting that Plaintiff "was again evaluated by Dr. Boles, the geneticist, but Dr. Boles *reportedly* concluded that 'Her [CVS] syndrome now has evolved into more of chronic fatigue syndrome. This causes issues with working, fatigue, anxiety, difficulty sleeping at night, headaches, trouble concentrating. Her fatigue is physical and mental'") (emphasis added).

Plaintiff also challenges the ALJ's reliance on the state agency reviewing consultants' opinion that Plaintiff did not suffer a severe mental impairment. *Plaintiff's Brief*, ECF No. 12, p. 25. Plaintiff argues that these consultants—who had completed their reviews by December 2020—based their findings and opinions on an "incomplete record" because they "did not have the ability to review the subsequently submitted report by Dr. Mintz that the Plaintiff had 'poor concentration' and 'calculation difficulties' and 'memory disturbance' (Tr. 394)" and "never had the opportunity to review Exhibits 5F-10F (Tr. 363-423), which was over half of the medical evidence which was submitted at the hearing level." *Plaintiff's Brief*, ECF No. 12, p. 25. Plaintiff's arguments are not well taken. State agency physicians are experts in Social Security disability programs. SSR 96-6p. An ALJ may rely on a state agency expert's findings and opinions even where there is a lapse of time between the expert's report and the ALJ's decision

and where additional medical evidence is later submitted. *Chandler,* 667 F.3d at 361 ("The

Social Security regulations impose no limit on how much time may pass between a report and

the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in*

*the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that

the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to

the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x

917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency

medical consultants; however, there is no requirement that an ALJ must always receive an

updated report from the State medical experts whenever new medical evidence is available.").

      In this case, and setting aside the fact that the state agency experts actually reviewed Dr.

Friedman's consultative evaluation and many of Dr. Mintz's treatment records, Plaintiff has not

established that the ALJ committed reversible error when she concluded that these experts'

opinions supported a finding that Plaintiff did not have a severe mental impairment. Plaintiff

generally refers to Exhibits 5F through 10F (R. 363–423) when complaining that these

consultants did not have a complete record before them, *Plaintiff's Brief*, ECF No. 12, p. 25, but

she does not explain how any of this evidence would have resulted in a different finding at step

two of the sequential evaluation. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL

1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the

evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has

done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the

Court to put them together. The Court does not assemble arguments for a party from

fragments."). While Plaintiff points to three specific symptoms identified by Dr. Mintz in his

opinion that the state agency consultants did not have before them —*i.e.*, poor concentration,

calculation difficulties, and memory disturbance—the ALJ did not err in discounting Dr. Mintz's opinion for the reasons discussed in more detail below.

Plaintiff further complains, in reply, that the ALJ should not have accorded any weight to the state agency consultants' opinions because they mischaracterized Plaintiff's medical conditions as "other disorders of the nervous system[.]" *Plaintiff's Reply Brief*, ECF No. 21, pp. 10–11 (citations omitted). Even assuming—without deciding—that these consultants so erred, their opinion that Plaintiff's mental impairments were not severe was merely one piece of evidence upon which the ALJ relied when making that step two finding. R. 24–29.

Plaintiff goes on to argue that the ALJ misrepresented Dr. Friedman's findings when the ALJ found at step two that Plaintiff did not have a severe mental impairment. *Plaintiff's Brief*, ECF No. 12, pp. 24–26; *Plaintiff's Reply Brief*, ECF No. 21, pp. 6–10. At step two, the ALJ noted, *inter alia*, that Dr. Friedman found that Plaintiff's "memory was unimpaired as was her ability to concentrate. The claimant reported to Dr. Friedman that she lived alone, was able to do simple food preparation, laundry, grocery shop, drive, and manage money (Exhibit 4F)." R. 24. At step four, the ALJ specifically considered Dr. Friedman's findings and opinion, as follows:

> Regarding the opinion of the independent mental status examiner in Exhibit 4F, Dr. Friedman opined that based on the claimant's allegations as well as based on observations made during the interview, *that the claimant showed symptoms of a major depressive disorder. Dr. Friedman noted that the claimant was able to communicate clearly but did have difficulty staying on topic. The claimant social interaction skills were noted to be limited but she was found to be able to comprehend and follow multistep directions. Her memory was unimpaired as was her ability to concentrate.* Dr. Friedman opined that she was capable of managing benefits in her own behalf. *Although Dr. Friedman did not provide a specific vocational assessment, the undersigned finds that his evaluation is consistent with the finding that the claimant does not have a severe mental impairment.* Although Dr. Friedman noted that the claimant had some slight issues, the results of his evaluation are persuasive and consistent with the objective evidence which documents that the claimant's issues of vomiting are greatly controlled therefore reducing her alleged anxiety. Moreover, the results of Dr. Friedman's evaluation

are supported by the claimant's reported activities of daily living as well as buyer [sic] indication that she does not receive any mental health treatment.

R. 29 (emphasis added).

In challenging the ALJ's consideration in this regard, Plaintiff first points to Dr. Friedman's "diagnos[is of] major depressive disorder with difficulty staying on topic and with limited social interaction (Tr. 29 vs. Tr. 361)." *Plaintiff's Brief*, ECF No. 12, p. 24. Plaintiff also points to the doctor's observation that Plaintiff was poorly dressed and groomed and his notation that Plaintiff "reported that her sleep was poor, she ate and groomed irregularly, which was not consistent with the ALJ's description of her successful functioning (Tr. 24 vs. Tr. 360-361)." *Id*.; *see also Plaintiff's Reply Brief*, ECF No. 21, pp. 6–7. Plaintiff further disputes "the ALJ's characterization of Dr. Friedman's finding unimpaired memory and concentration" because this physician also found Plaintiff "rambled, needed frequent redirection to stay on topic, her mood was 'very discouraged', her affect was constricted, she has 'little difficulty' with long or short-term memory except that she was unable to remember what she ate for lunch, and she was only able to remember 4 out of 5 digits in sequence and that her "'social interaction skills were limited during the interview' (Tr. 361)." *Plaintiff's Brief*, ECF No. 12, p. 24; *see also Plaintiff's Reply Brief*, ECF No. 21, pp. 7–8.

The Court is not persuaded that the ALJ committed reversible error in her evaluation of Dr. Friedman's findings. As an initial matter, the Court is not persuaded that the ALJ improperly mischaracterized Dr. Friedman's findings. The ALJ specifically noted that Dr. Friedman found that Plaintiff "showed symptoms of a major depressive disorder." R. 29; *see also* R. 362 ("Based on the claimant's report, as well as on observations made during the interview, I would conclude that she is showing symptoms of a major depressive disorder."). However, even Plaintiff acknowledges that diagnoses alone are not sufficient to establish the severity of an impairment.

21

*Plaintiff's Brief*, ECF No. 12, p. 22; *see also Salles*, 229 F. App'x at 145.    In addition, the ALJ

noted Dr. Friedman's finding that Plaintiff's "memory was unimpaired as was her ability to

concentrate". R. 24, 29. *See* R. 361 ("Long-term memory appears to be unimpaired. Short-term

memory appears to be unimpaired . Working memory appears to be unimpaired . Ability to

concentrate was unimpaired ."), 362 ("She was able to comprehend and follow multi step

directions. Her long-term memory appeared to be unimpaired . Short-term memory appeared to

be unimpaired . Working memory appeared to be unimpaired . Ability to concentrate was

unimpaired during the interview.").

The ALJ further specifically noted Dr. Friedman's observations that Plaintiff had

difficulty staying on topic, that her social skills were "limited[,]" and that she had "slight

issues[.]" R. 29. Although Plaintiff complains that the ALJ did not expressly discuss other

observations made by Dr. Friedman—such as constricted affect, discouraged mood, and being

poorly dressed and groomed—the Court cannot say that the ALJ improperly characterized the

totality of Dr. Friedman's findings. R. 24, 29.

Plaintiff goes on to complain that, "[d]espite the ALJ's concern that Dr. Friedman's

'specific vocational assessment was incomplete', the ALJ proceeded to find that the evidence

showed no severe impairment (Id.)." *Plaintiff's Brief*, ECF No. 12, p. 41.[8] The Court is not

persuaded that this issue requires remand. Plaintiff cites to no authority for her contention that

the ALJ committed reversible error in relying, at step two, on Dr. Friedman's evaluation when

---

[8] Although Plaintiff cites to "Id.", it is not immediately clear to what page of the ALJ's opinion
she intends to refer, because the citation immediately preceding this statement refers to "*Evanitus
v. Berryhill*, 3:16-CV-845, slip op. at 22-25 (M.D. Pa. Feb. 28, 2018)"). The Court assumes that
Plaintiff intended to cite to the ALJ's statement that "[a]lthough Dr. Friedman did not provide a
specific vocational assessment, the undersigned finds that his evaluation is consistent with the
finding that the claimant does not have a severe mental impairment." R. 29.

that physician "did not provide a specific vocational assessment." *See Plaintiff's Brief*, ECF No. 12, p. 41. Moreover, this Court has already explained its conclusion that substantial evidence supports the ALJ's step two findings. In any event, even if the ALJ erred in finding that Plaintiff's mental impairments were not severe, any such error was harmless in light of the fact that the ALJ continued to consider those impairments at step four. *See Salles*, 229 F. App'x at 145 n.2; *Orr*, 805 F. App'x at 88; *Rafine*, 2020 WL 3073829, at *4; *Edinger*, 432 F. Supp. 3d at 531.

Plaintiff also insists that the ALJ committed reversible error at step four when, in finding that Plaintiff could perform her past relevant work despite her impairments, the ALJ failed to properly consider and accommodate all the limitations flowing from those impairments. *Plaintiff's Brief*, ECF No. 12, pp. 22–42; *Plaintiff's Reply Brief*, ECF No. 21, pp. 6–16. This Court disagrees. A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandle,* F. 3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also

23

has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the present case, as detailed above, the ALJ determined that Plaintiff had the RFC to perform sedentary work "except [that] she can occasionally climb ramps and stairs; balance on wet moving or uneven surfaces; kneel, stoop, and crouch; and she cannot crawl or climb ladders, ropes or scaffolds." R. 25. In attacking this RFC, Plaintiff challenges the ALJ's consideration of, *inter alia*, medical opinion evidence. For claims filed after March 27, 2017,[9] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability

---

[9] As previously noted, Plaintiff's SSI claim was filed on July 7, 2020.

factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, when crafting the RFC at step four of the sequential evaluation, the ALJ found, *inter alia*, that Dr. Mintz's opinion was not persuasive, reasoning as follows:

> As for the disability questionnaire completed by the claimant's medical provider, Dr. Mintz, the undersigned does not find this to be persuasive (Exhibit 7F). Dr. Mintz opined that the claimant would be absent more than three times a month due to her illness but this opinion is not supported by his own treating records which

show that her vomiting has been greatly controlled. Moreover, this opinion is inconsistent with the medical evidence including the claimant's self reports which note that prior to her returning to work in March 2021, she was no longer experiencing vomiting episodes. The undersigned notes that the checked symptoms by Dr. Mintz are based on the claimant's self reporting and are not supported by neurological testing or any other objective findings.

R. 29. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. §

416.920c(c)(1)–(2); *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639–40 (3d Cir. 2024)

(finding that "a judge need not reiterate the magic words 'support' and 'consistent' for each

doctor" in order to satisfy the requirements for the supportability and consistency factors,

providing that the judge "weave[s] supportability and consistency throughout her analysis of

which doctors were persuasive"); *Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir.

2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and

briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d

1058, 1065 (3d Cir. 1993)); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d

Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into

objective findings simply by recording them in his narrative report[.]") (citations omitted);

*Clarke v. Comm'r of Soc. Sec.*, No. CV 23-1484, 2024 WL 4252054, at *1 (W.D. Pa. Sept. 20,

2024) ("The ALJ also adequately analyzed the supportability of this opinion, pointing out that

Ms. Cohen did not support her opined limitations by reliance on any objective findings.");

*Blackwell v. O'Malley*, No. CV 23-319, 2024 WL 1214199, at *1 (W.D. Pa. Mar. 21, 2024)

("This [discussion that the opined limitations "appeared to be largely based" on the plaintiff's

own statements] was a sufficient supportability analysis, as the ALJ is allowed to discount a

doctor's opinion when it is based on Plaintiff's statements and Plaintiff's complaints are properly

discounted. . . . Here, this was proper as the ALJ had previously found that Plaintiff's subjective

complaints lacked credibility.") (citing *Morris v. Barnhart*, 78 Fed. Appx. 820, 824–25 (3d Cir.

2003)); *L. L. Y. v. Comm'r of Soc. Sec. Admin.*, No. CV 22-1710, 2023 WL 1883348, at *4

(D.N.J. Feb. 9, 2023) (finding that the ALJ sufficiently explained why he did not find a medical

opinion persuasive where the ALJ considered, *inter alia*, that the claimant's own testimony

contradicted such an opinion); *Statkiewicz v. Kijakazi*, No. CV 21-4316, 2022 WL 807421, at

*10 (D.N.J. Mar. 16, 2022) ("[W]e find that the ALJ considered the supportability factor [when

finding a medical opinion unpersuasive] because he determined that Dr. Madison's opinion was

largely based on [the claimant's] self-reported limitations.").

Plaintiff, however, insists that the ALJ erred in considering Dr. Mintz's opinion and

should have included RFC restrictions to accommodate that physician's opined limitations

regarding impaired attention, concentration, and memory, such as time off-task and absences

from work. *Plaintiff's Brief*, ECF No. 12, pp. 22–23, 27, 29–34, 40–41; *Plaintiff's Reply Brief*,

ECF No. 21, pp. 6–12. Plaintiff contends that her symptoms "must be considered in" the RFC,

*Plaintiff's Brief*, ECF No. 12, p. 22, but offers nothing in further support of that contention; she

simply acknowledges that diagnoses alone are insufficient to establish an impairment's severity

and that a claimant must present evidence that an impairment significantly limits ability to do

basic work activities or impaired the claimant's capacity to cope with the mental demands of

working. *Id*.

Plaintiff next contends that "Dr. Mintz concluded that her attention/concentration were

poor/impaired (Tr. 311-312, 317-318, 336, 340, 349, 363, 373, 381)" and that the ALJ had a

"duty" to consider the impact of these limitations when crafting the RFC.  *Plaintiff's Brief*, ECF

No. 12, pp. 23–24; *see also id*. at 27. But, as Defendant observes, *Defendant's Brief Pursuant to

Local Civil Rule 9.1*, ECF No. 16, p. 20, Dr. Mintz did not perform any memory or other

cognitive testing during these office visits. *See* R. 311–12, 317-318, 336, 340, 349, 363, 373,

381. To the extent that Plaintiff intends to rely on her own reports to this doctor, this Court has already noted that the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*, 131 F. App'x at 879; *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Moreover, to the extent that Dr. Mintz's report contains checked boxes indicating "[c]ognitive [f]unction [s]ymptoms" of poor concentration, calculation difficulties, and memory disturbance, R. 394, the ALJ reasonably found—absent an accompanying explanation in the opinion or evidence of any objective testing in the treatment notes—that Dr. Mintz based those checked symptoms on Plaintiff's self-reporting that was "not supported by neurological testing or any other objective findings." R. 29. Finally, and as previously stated, the Third Circuit has found that check-the-box forms such as Dr. Mintz's "Disability Questionnaire – Symptom Checklist" are, at best, "weak evidence." *See Galette*, 708 F. App'x at 91; *see also Hevner v. Comm'r Soc. Sec.*, 675 F. App'x 182, 184 (3d Cir. 2017) ("Moreover, as we have said before, 'check box' forms that require little or no explanation, such as the mental capacity assessment filled out by Dr. Lewis, are 'weak evidence at best' in the disability context[.]") (citations omitted). Additionally, for the reasons that are discussed in more detail below, the ALJ properly discounted the intensity, persistence, and limiting effects of Plaintiff's subjective statements.

Plaintiff also appears to argue that the ALJ erred in failing to incorporate limitations that Plaintiff believes flow from Dr. Friedman's observations that Plaintiff had difficulty staying on topic and needed to be redirected; that Plaintiff was poorly dressed and groomed; that she lost her friends and was isolated; that she had a very discouraged mood and a constricted affect; and that her social interaction skills were "limited". *Plaintiff's Brief*, ECF No. 12, pp. 27–28, 40–41; *Plaintiff's Reply Brief*, ECF No. 21, pp. 6–8. However, the ALJ accurately found that Dr. Friedman did not translate any of these observations into specific functional limitations. R. 29. C*f. Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *1 (3d Cir. June 15, 2023) (concluding that substantial evidence supported the ALJ's finding not to adopt a physician's "vague" opinions when crafting the RFC determination because, *inter alia*, those opinions did not address the claimant's abilities in vocational terms), *cert. denied sub nom. Pierznik v. O'Malley*, 144 S. Ct. 1035, 218 L. Ed. 2d 190 (2024). In any event, this Court has already noted that Dr. Friedman opined that Plaintiff's memory and ability to concentrate were unimpaired and that, despite the observation that Plaintiff's social interaction skills "limited[,]" Plaintiff could initiate and sustain conversation and maintain adequate eye contact. R. 361–62.

Plaintiff also argues that the ALJ, having found mild mental limitations at step two, erred by failing to both translate these findings into functional restrictions in the RFC and explain in the RFC assessment why no related limitations were included. *Plaintiff's Brief*, ECF No. 12, pp. 27–42; *Plaintiff's Reply Brief*, ECF No. 21, pp. 6–7, 15. Plaintiff specifically contends that this error is not harmless because Plaintiff's mild mental impairments precluded her ability to perform her past relevant skilled work as an accounting clerk. *Id*. Plaintiff's arguments are not well taken. The ALJ expressly considered Plaintiff's mild mental limitations when crafting Plaintiff's RFC:

> [A]s noted above, the claimant's mild "paragraph B" limitations are so slight that
> they do not cause any measurable loss of function in the mental abilities to
> understand, remember or carry out instructions, to make work related decisions, or
> to respond appropriately to supervisors, coworkers, usual work situations, changes
> in work setting, or work pressures in a work setting. Thus, the following residual
> functional capacity assessment does not reflect any limitation in mental abilities.

R. 27. The ALJ further noted that Plaintiff had not undergone any treatment for psychological

issues, that Plaintiff reported that she lived alone, was able to do simple food preparation,

laundry, grocery shop, drive, and manage money, and that mental status examinations were

grossly intact. R. 24, 26, 28. *See Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d

Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some ... mental

concentration"); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012)

("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant

engages when assessing his or her residual functional capacity."); *D.C. v. Comm'r of Soc. Sec.*,

No. CV 20-2484 (RBK), 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("Her ability to drive,

prepare meals, manage funds, shop, and take a cruise also contradicted her claims that she had

difficulty concentrating, remembering information, and engaging in social activities."). "[A]n

RFC assessment does not need to contain an in-depth analysis on mental impairments when the

ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild."

*D.C.*, 2021 WL 1851830, at *6; *Kring-Schreifels v. Kijakazi*, No. CV 22-110, 2023 WL

3097210, at *7 (E.D. Pa. Apr. 26, 2023) ("Because the ALJ adequately addressed the mental

health treatment evidence in the record in concluding that the functional impact of Plaintiff's

mental health impairment was so slight that it did not require inclusion in the RFC assessment or

the hypothetical posed to the VE, tr. at 24, I find no error in the ALJ's analysis.") (citations

omitted); *Gita P. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-6087 (MAS), 2022 WL 1683834, at

*6 (D.N.J. May 26, 2022) (explaining that "[m]any courts in this District, however, have

concluded that ALJs do not err when giving short shrift to non-severe mental impairments in RFC determinations" and that "the trend from these cases is clear: [the ALJ] did not reversibly err by relying on his thorough step-two findings in crafting [the claimant's] RFC. In so affirming, the Court joins the chorus of cases holding the same"). Based on this record–where Plaintiff's mental impairments caused no more than mild limitations in her ability to function and in consideration of her activities–the Court cannot conclude that the ALJ erred in failing to include any mental limitation in the RFC determination. *See Peterman v. Berryhill*, No. CV 18-13751, 2019 WL 2315016, at *8–10 (D.N.J. May 31, 2019), *appeal dismissed* (Dec. 19, 2019) ("[T]here was ample evidence in the record indicating that Plaintiff's mild mental impairments did not meaningfully impact her ability to function during the relevant period. . . . Thus, the ALJ's decision to exclude Plaintiff's mild mental impairments from the RFC was supported by substantial evidence, nor did the ALJ err by failing to include Plaintiff's mild mental limitations in her hypothetical question to the VE."); *cf. Benjamin v. Comm'r of Soc. Sec.*, No. 1:17-CV-11719, 2019 WL 351897, at *6–7 (D.N.J. Jan. 29, 2019) ("Although it is true that an ALJ must consider all of a claimant's impairments when assessing her RFC, the non-severe impairments must be established by credible evidence and have demonstrable impact on a claimant's RFC."); *Sanchez v. Colvin*, No. CV 15-5539, 2016 WL 4967764, at *3 n.2 (D.N.J. Sept. 16, 2016) (affirming denial of benefits where the ALJ did not include any mental limitations in the RFC and where, *inter alia*, the "ALJ did undertake a more comprehensive analysis of [the claimant's] mental impairment in the course of determining [the claimant's] RFC" and finding "that the ALJ discharged his responsibility with respect to considering the claimant's non-severe mental impairment").

Plaintiff's attacks on the ALJ's finding that Plaintiff could perform her past relevant work as an accounting clerk are similarly unavailing. At step four, an ALJ determines whether the claimant can perform her past relevant work. 20 C.F.R. § 416.920(f); *see also Folger v. Comm'r of Soc. Sec.*, No. CV 16-1487, 2017 WL 399205, at *2 (D.N.J. Jan. 30, 2017) ("The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.") Here, relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as an accounting clerk, which required sedentary exertion, SVP 5.[10] R. 21. The ALJ explained that her RFC would permit Plaintiff to perform the physical and mental demands of this work as actually and generally performed. *Id*. In challenging this conclusion, Plaintiff complains that even mild mental limitations would preclude the ability to perform her past relevant work. *Plaintiff's Brief*, ECF No. 12, pp. 26–36, 41; *Plaintiff's Reply Brief*, ECF No. 21, pp. 14–16. However, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed. The Court cannot conclude that the ALJ committed reversible error when considering Plaintiff's mild mental limitations in crafting the RFC and when finding that Plaintiff can perform her past relevant skilled work as an accounting clerk. *Cf. Grice*, 2021 WL 4551357, at *8 n.2 ("The Court

---

[10] "The DOT [Dictionary of Occupational Titles] lists a specific vocational preparation (SVP) time for each described occupation." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 3562691, at *7 n.8 (D.N.J. Aug. 6, 2019). "SVP" refers to the amount of time required by a typical worker to learn how to perform a specific job." *Jones v. Astrue*, 570 F. Supp. 2d 708, 716 n.5 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008). "Using the skill level definitions in 20 C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Thomas*, 2019 WL 3562691, at *7 n.8.

reiterates that the mental limitations at issue here were found to be mild, and that Plaintiff does not challenge the ALJ's classification of those limitations. Further, the Court notes that the ALJ's decision sufficiently considers how Plaintiff's mental impairments affect her RFC and her capability to perform past relevant work."); *Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656 (JBS), 2017 WL 3151243, at *6–7 (D.N.J. July 24, 2017) ("Plaintiff has not offered any support for her position that someone with a mild limitation in three broad functional areas . . . is incapable of performing a job rated with a skill level of six, as her past relevant work as a bookkeeper is. . . . Because the ALJ need only include credible limitations in the RFC, and because there is substantial evidence supporting the ALJ's conclusion that Plaintiff's mental impairments would cause only mild limitations on her daily life and not impact her work, the Court will not remand on this basis.").[11]

---

[11] To the extent that Plaintiff relies on vocational expert testimony based on a hypothetical question that contained different limitations than those ultimately found by the ALJ, *Plaintiff's Brief*, ECF No. 12, pp. 33–34, that reliance boils down to an attack on the RFC, which the Court has already explained is supported by substantial evidence. Accordingly, Plaintiff's arguments in this regard do not warrant remand. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (stating that a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments"); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698 (RBK/KMW), 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) ("[T]he ALJ does not have a duty to respond to Plaintiff's counsel's attempts to expand the hypothetical question. Again, SSR-004P only focuses on apparent conflicts with the VE's testimony and the DOT listing, not attempted conflicts with the initial ALJ hypothetical and a newly revised one from Plaintiff's counsel"); *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) ("'[I]t would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'") (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)).

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Brief*, ECF No. 12, p. 39; *Plaintiff's Reply Brief*, ECF No. 21, pp. 12–14. Plaintiff's arguments are not well taken. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate

pain or other symptoms; treatment, other than medication, currently received or have received

for relief of pain or other symptoms; any measures currently used or have used to relieve pain or

other symptoms; and other factors concerning your functional limitations and restrictions due to

pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective

complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them

where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134

(citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d

Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as

there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered

Plaintiff's subjective complaints. R. 26–27. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that her

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons

explained in this decision." R. 27. As previously discussed, the ALJ detailed medical evidence

and record testimony to support her findings. R. 26–29. The ALJ also explained why Plaintiff's

subjective statements were inconsistent with her claim of disability, as follows:

> As for the claimant's statements about the intensity, persistence, and limiting
> effects of her symptoms, they are inconsistent with a claim for total disability. The
> undersigned finds that although her disorder of the nervous system results in
> limitations in functioning, her disorder does not result in total disability. As detailed
> below, the evidence reveals that the claimant's frequency and duration of symptoms
> is not supported by a preponderance of the evidence. The claimant reported an all
> but end to her episodes of vomiting by June 2021. Although she testified that when
> her vomiting ended, her condition evolved into chronic fatigue and migraines, there
> is insufficient evidence to support that these alleged impairments are medically
> determinable or severe. Although the claimant testified to debilitating limitations
> and her medical provider, Dr. Mintz, checked off various symptoms that the
> claimant reported (Exhibit 7F), these checked off symptoms are noted to be based

off the claimant's subjective reports and not based on objective findings or observations by Dr. Mintz. Likewise, although Dr. Mintz also reported that the claimant had weight loss of 10 pounds over year and a half, the current record contains no objective findings to support this weight loss. Moreover, physical examinations do not demonstrate any physical limitations or any related medically determinable impairments due to this alleged weight loss. Additionally, as noted above, the claimant's mild "paragraph B" limitations are so slight that they do not cause any measurable loss of function in the mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures in a work setting. Thus, the following residual functional capacity assessment does not reflect any limitation in mental abilities. As such, the undersigned finds that although the claimant is limited to a compromised range of sedentary work, she is not precluded from all work activity as she alleges.

R. 27. In the view of this Court, this record provides substantial support for the ALJ's decision to

discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*,

717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, as does her consideration of the findings and opinions of Dr. Mintz, Dr. Friedman, and

the state agency reviewing consultants as well as the purported findings of Dr. Boles.

**B.      Procedural Challenges Regarding Title II and XVI claims**

Plaintiff asserts in her reply that the administrative record is incomplete because filings

related to an application for disability insurance benefits ("DIB," "SSDI," or "Title II") are

missing from the record. *Plaintiff's Reply Brief*, ECF No. 21, pp. 1–6. As background, Plaintiff

asserted in a footnote in her opening brief that she "protectively filed" "applications for SSDI,

and SSI" on July 7, 2020, alleging disability beginning on June 24, 2020. *Plaintiff's Brief*, ECF

No. 12, p. 1, n.1 (noting that there is no SSI application in the record, but that the record includes

SSI initial and reconsideration decisions and noting further that there is a DIB application in the

record, but no DIB initial and reconsideration decisions). Plaintiff complains that the ALJ "failed

to explain why she ignored the Title II application or insured status documentation in record and improperly issued SSI only decision without explanations[.]" *Id.* at 1, n.2. Plaintiff goes on to argue that the Commissioner's final decision is incomplete because the ALJ based her decision on only Plaintiff's SSI claim and the Appeals Council denied request for review as to only the SSI application. *Id*. at 3 (citations omitted). Plaintiff contends that "[r]eopening is permitted for procedural mistakes such as the ALJ's and Appeals Council's failure to articulate both the Titles II (SSDI) and XVI (SSI) applications." *Id*. (citing 20 C.F.R. §§ 404.987,[12] 404.988(c)(7)–(8)[13]). In response, the Acting Commissioner acknowledges Plaintiff's assertion that she in fact filed a Title II DIB application, but points out that the ALJ did not address that application "because Plaintiff requested a hearing on a reconsideration decision that *only* pertained to an SSI claim (*see* Tr. 124, 126)." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, pp. 1–2, n.1 (emphasis in the original).

---

[12] This regulation provides, *inter alia*, that "a determination or a decision made in your case which is otherwise final and binding may be reopened and revised by us." 20 C.F.R. § 404.987(a).

[13] This regulation provides that a "determination, revised determination, decision, or revised decision may be reopened . . . [a]t any time if[,]" *inter alia*,

> (7) It finds that the claimant did not have insured status, but earnings were later credited to his or her earnings record to correct errors apparent on the face of the earnings record (section 205(c)(5)(C) of the Act), to enter items transferred by the Railroad Retirement Board, which were credited under the Railroad Retirement Act when they should have been credited to the claimant's Social Security earnings record (section 205(c)(5)(D) of the Act), or to correct errors made in the allocation of wages or self-employment income to individuals or periods (section 205(c)(5)(G) of the Act), which would have given him or her insured status at the time of the determination or decision if the earnings had been credited to his or her earnings record at that time, and the evidence of these earnings was in our possession or the possession of the Railroad Retirement Board at the time of the determination or decision; [or]
>
> (8) It is fully or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made[.]

20 C.F.R. § 404.988(c)(7)–(8).

In her reply brief, Plaintiff takes the position that only a Title II application was filed; her SSI application was never actually filed. *Plaintiff's Reply Brief*, ECF No. 21, p. 1. According to Plaintiff, she was proceeding *pro se* at this time in 2020 and that, although she intended to file an SSI application, the "SSA apparently failed to take the SSI application." *Id*. Plaintiff's counsel was subsequently appointed on June 14, 2021, R. 161–64,[14] and that counsel filed a brief with the ALJ on July 20, 2021, which addressed only a Title II claim for DIB, R. 279–80. *Plaintiff's Reply Brief*, ECF No. 16, p. 1. At the Appeals Council review level, her "attorney again assumed that the SSI labeling was a clerical error and that addressed the case as a Title II case (Tr. 298–302)." *Id*. at 1–2 (denying that she withdrew her Title II case, and arguing that "it was not technically denied, it was not medically denied, and it was clearly filed and acknowledged by SSA as received") (citations omitted). Plaintiff argues that, as a consequence, "legal error" occurred in the processing of her Title II application as a SSI case, and complains that, "[i]n her decision, the ALJ further did not acknowledge the alleged onset date of June 24, 2020, but instead, incorrectly listed the alleged onset date as July 7, 2020, using the date that the Title II application was filed (Tr. 30)." *Id*. at 2. Plaintiff speculates that the "SSA local office failed to take the SSI application" despite her *pro se* intent to file and "failed to process the Title II application at the initial, reconsideration or hearings level." *Id*. Plaintiff further contends that "[t]he ALJ appeared as confused as the Plaintiff and her new attorney at the hearing [on July 27, 2021] as to the Agency level mistakes when the ALJ issued her decision only on a nonexistent, unfiled SSI application (Tr. 21–34)." *Id*. Plaintiff argues that, because "procedurally, the final decision was incomplete, or, alternatively, there was no final determination on the Title II

---

[14] Plaintiff's counsel before this Court also represented Plaintiff in the administrative proceedings beginning June 14, 2021.

application, and a decision was made on a non-filed SSI application, reopening, pursuant to 20 C.F.R. §404.988(c)(7) and (8) apply[.]" *Id*. According to Plaintiff, the decision should therefore be reopened because "there was clear legal error at the Agency level in mislabeling a Title II application as an unfiled Title XVI case and by the ALJ not investigating or inquiring into the defective and inconsistent record, including when she changed the onset date from June 24, 2020 to July 7, 2020 (Tr. 21, 30)." *Id*. at 3 (citing 20 C.F.R. § 404.988(c)(8)). Plaintiff further argues that the decision may also be reopened because the SSA improperly determined that Plaintiff did not have insured status. *Id*. (citing 20 C.F.R. § 404.988(c)(7)). According to Plaintiff, this Court lacks jurisdiction to review an SSI application that was never filed "due to clerical error on the part of the Agency field office." *Id*. at 5–6.

Plaintiff's arguments are not well taken. Both the initial denial and the denial upon reconsideration addressed only a claim for SSI benefits. R. 117–21, 123–25.[15] The May 7, 2021, notice of the administrative hearing set for July 27, 2021, specifically advised, *inter alia*, that the upcoming hearing "concerns your application of July 7, 2020, for Supplemental Security Income (SSI)[.]" R. 151. Plaintiff—and her counsel as of June 14, 2021—were on notice that the ALJ was considering only an SSI application under Title XVI. Although Plaintiff apparently complains that her attorney "was first granted access to the Exhibit File on July 2, 2021, three (3) weeks prior to the hearing[,]" her counsel never asked for a continuance of the hearing. Notably,

---

[15] Plaintiff incorrectly asserts that the ALJ changed Plaintiff's alleged disability onset date. *Plaintiff's Reply Brief*, ECF No. 21, pp. 2 ("the ALJ further did not acknowledge the alleged onset date of June 24, 2020, but instead, incorrectly listed the alleged onset date as July 7, 2020, using the date that the Title II application was filed (Tr. 30)"), 3 ("by the ALJ not investigating or inquiring into the defective and inconsistent record, including when she changed the onset date from June 24, 2020 to July 7, 2020 (Tr.21, 30)"), 5 ("[T]he ALJ's change of onset date at hearing."). In her decision, the ALJ specifically noted that, on July 7, 2020, Plaintiff "filed an application for supplemental security income, alleging disability beginning June 24, 2020." R. 21.

at the hearing held approximately three weeks later, Plaintiff's counsel denied that she had any objection to going forward with a video hearing that day. R. 45–46. Plaintiff's counsel further indicated that she had had an opportunity to discuss with Plaintiff the issues in case, and counsel waived a reading of those issues. R. 46–47. Plaintiff's counsel also expressly agreed that the record was complete. R. 46. When the ALJ later stated that "we're here today because you're unhappy with the prior decision that you received regarding your Application for Disability Benefits Under Title XVI[,]" Plaintiff's counsel never objected or otherwise clarified that Plaintiff also had a Title II claim. R. 47.[16]

In short, where Plaintiff's counsel had the opportunity to review the record weeks prior to the administrative hearing, had the opportunity to discuss the case issues with Plaintiff, had no objection to proceeding with the hearing and did not ask for a continuance of the hearing, did not clarify whether the ALJ was addressing Plaintiff's Title II claim, and confirmed that the record

---

[16] Notably and in addition, the *Complaint* filed in this Court belies Plaintiff's assertion in her reply brief that an SSI application was never filed:

> 1.  This is an action seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter "the Commissioner"). Plaintiff [] requests review of the Commissioner's *final decision denying her claim for Supplemental Security Income (SSI) benefits*. . . .

> ***

> 5.  This action arises out of the denial of Plaintiff's claim for SSDI *and SSI* which was originally filed on July 7, 2020, alleging that she was disabled beginning on June 24, 2020, *hereafter amended to July 7, 2022*.

> 6.  This matter was heard by an administrative law judge ("ALJ") who ruled on November 3, 2021, that the Plaintiff was not entitled to *SSI benefits*. The Appeals Council denied the Plaintiff's request for review, making the ALJ decision the Commissioner's final administrative decision. . . .

*Complaint*, ECF No. 1, ¶¶ 1, 5–6 (emphases added). It is not clear why Plaintiff referred to an amended disability onset date of July 7, **2022**, or if Plaintiff's citation to "2022" was a typographical error.

was complete, this Court will not conclude the ALJ's failure to adjudicate the Title II claim warrants reversal. *Cf. Grant v. Colvin*, No. CV 13-13102-DHH, 2015 WL 4945732, at *7 (D. Mass. Aug. 20, 2015) (finding that, although the claimant was proceeding *pro se* at the time she filed the application for a hearing with the ALJ, claimant "retained counsel more than twenty days prior to the hearing. Counsel had adequate time to state any objections to the issues to be adjudicated by the ALJ, but failed to do so. Plaintiff's counsel also failed to raise an objection to the ALJ's failure to adjudicate the SSI claim during the ALJ hearing itself" and "Plaintiff's counsel did not attempt to correct the ALJ when" the ALJ stated at the hearing that he was addressing DIB claim).

However, even assuming—without definitively deciding—that the ALJ erred in failing to adjudicate Plaintiff's DIB application under Title II, any such error was harmless. Plaintiff's counsel expressly confirmed at the administrative hearing that the record was complete, R. 46, and Plaintiff has pointed to no additional relevant evidence. This Court detailed this record and explained why substantial record evidence supported the ALJ's finding that Plaintiff was not disabled from July 7, 2020, the date on which the SSI application was filed, through the date of that decision, November 3, 2021. R. 21–30; *see also Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 67 (3d Cir. 2015) ("The relevant period for her SSI claim began on the date she applied for benefits, and ended on November 2, 2011, the date of the ALJ's decision."). Remand for consideration of disability under Title II, beginning a mere two weeks prior to the period adjudicated by the ALJ and based on the same evidence, would be a useless exercise in futility. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008) (stating that the relevant

41

period for DIB benefits is the alleged onset date through the date last insured); *see also* R. 185

("DIS DLI: 09/21").[17]

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 31, 2025                    *s/Norah McCann King*
                                      NORAH McCANN KING
                                      UNITED STATES MAGISTRATE JUDGE

---

[17] Plaintiff asserts in conclusory fashion for the first time in her reply brief that she "was denied her due process rights to have her Title II application processed and irreparably deprived her of her appeal rights due to DLI issues, including the potential Medicare coverage." *Plaintiff's Reply Brief*, ECF No. 21, p. 5. Plaintiff provides no explanation as to what she means by this assertion or upon what authority she relies for this contention. *See id*. The Court need not—and will not—consider Plaintiff's belated and undeveloped argument in this regard. *See Wright v. Comm'r Soc. Sec*., 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted); *States v. Pelullo*, 399 F.3d 197, 222 (3d Cir.2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").